## E. L. HIBBARD v. JOHN N. MILLS.

*Parties to Action on Contract. Pleadings. Duress of Goods. Evidence.*

N. & Co. were jointly and equally interested with the plaintiff in the contract declared upon, at the time of the making thereof, of which the defendant then had notice. The plaintiff and defendant understood at the time they made the contract, that it was a contract between them, and not between the plaintiff and N. & Co. on one part, and the defendant on the other part. *Held*, that the plaintiff could maintain an action thereon in his own name, without joining N. & Co. as plaintiffs.

The declaration alleged that the plaintiff employed the defendant to buy a certain quantity of butter on commission; that the defendant was to make true weights thereof in purchasing the same, and was to be allowed the same weights he purchased at; that the defendant purchased the butter, and delivered the same to the plaintiff, and was paid therefor the amount he claimed to have paid to those of whom he purchased. Breach, that the weights allowed to the defendant were for a much larger amount than the weights at which he purchased, and that the defendant falsely represented to the plaintiff the weights at which he purchased the butter, and thereby procured the plaintiff to pay him a much larger sum than he was entitled to receive, whereby, &c. The defendant requested the court to charge, that unless the plaintiff showed that the weights at which he received the butter of the defendant, exceeded the weights at which the defendant bought the same, he could not recover; which the court refused. *Held*, error; and that under the declaration, the plaintiff could only recover for the excess of the weight of the butter as represented by the defendant and paid for by the plaintiff, over the weight thereof as purchased and paid for by the defendant.

The defendant had delivered to the plaintiff the butter bought for him on commission as aforesaid, and had also sold and delivered other butter to him, and the plaintiff had bargained with the defendant for a large quantity of butter which the defendant still had in his possession, and the title to which had not passed to the plaintiff. The plaintiff had advanced money to the defendant, from time to time, on their butter transactions, largely in excess of the butter he had received. Under these circumstances, the plaintiff called on the defendant for the butter still in his possession, and for which there was a balance yet due the defendant. A disagreement thereupon arose as to the terms of the contract. The defendant claimed that the plaintiff was to take the butter at the same weight he had purchased it at; and the plaintiff claimed that he was to have it at its weight at the time of delivery. The contract in that respect was as the defendant claimed it. The defendant also claimed that the plaintiff should then pay the balance due him on their butter transactions, and close the business, and give a receipt for the butter the defendant then had, and for all the butter the plaintiff had had, including that bought on commission, and refused to deliver the butter in his possession, unless the plaintiff would accede to his claims. The plaintiff finally concluded to do so, and paid the balance claimed, under protest, took the butter and gave the defendant a receipt therefor, and for all he had previously had, and the receipt expressed that the butter was "accepted per invoice delivered to-day." In said invoice the butter was all reckoned at the weights the defendant bought it at. *Held*, that there was no duress of the plaintiff's goods.

Commission merchants, who had no knowledge as to the weight of certain butter consigned to them for sale, except what they derived from their books of entry, and from accounts of sales kept and made by those in their employ, were not allowed to depose thereto.

ASSUMPSIT. Plea, the general issue and trial by jury, September term, 1872, Franklin county, ROYCE, J., presiding.

The declaration alleged that, "at West Shefford, in the Province of Quebec, on the 23d day of July, 1868, the plaintiff employed the defendant to purchase for him about six hundred tubs of butter, for which the defendant was to pay not to exceed twenty cents in silver per pound, and the defendant was to make true and accurate weights in purchasing the same, and such weights as were allowed by defendant to those of whom he should purchase said butter, should be allowed to the defendant; of which weights the defendant was to render a true and accurate statement, and the plaintiff was to pay said defendant the sum of one half of a cent in silver on each pound, as compensation and reward for the purchase thereof, which sum, and the amount so paid for said butter, should be paid to the defendant upon the delivery of the same at such time as should thereafter be agreed upon. And the defendant agreed to be so employed by said plaintiff; and in persuance thereof, the defendant, thereafterwards, purchased for the plaintiff about six hundred tubs of butter, and delivered the same to the plaintiff, and was paid therefor the sum he claimed to have paid the persons of whom he purchased the same, and was also paid as compensation the sum of one half of a cent for each pound so purchased. And the plaintiff avers, that the weights allowed by the plaintiff to the defendant, were for a much greater amount than those the defendant allowed to those of whom he purchased, and exceeded by a great many pounds the actual weights thereof, to wit, the amount of two thousand pounds; and the plaintiff avers that the defendant, contriving to injure the plaintiff, rendered to the plaintiff an incorrect statement of the weights of the butter he purchased, and so procured the plaintiff to pay him a much larger sum of money than the defendant was justly entitled to on delivery thereof as aforesaid, which money the plaintiff did so pay to the defendant, whereby," &c.

The plaintiff introduced testimony tending to show, that on the 23d of July, 1868, at West Shefford, in Canada, he purchased of the defendant about 400 tubs of butter, at twenty cents in silver per pound; that afterwards, on the same day, he employed the defendant to purchase for him from 400 to 600 other tubs of butter, at twenty cents in silver per pound, the defendant to receive as commission, one half of a cent per pound; that he went into the defendant's cellar, and examined some of the weights at which the defendant had purchased the butter, and that it was

agreed that the butter so to be purchased, was to be delivered by the defendant, and paid for by the plaintiff at the weights at which the defendant purchased it of the persons of whom he purchased ; and the defendant testified to this agreement.   The plaintiff's testimony further tended to show, that said butter was to be delivered and paid for when it should be purchased ; and the proof showed that it was either purchased on said 23d of July, or within one week thereafter.   The plaintiff testified as follows :

" S. C. Noble & Co. were jointly and equally interested with me in this contract by which Mr. Mills was to purchase the butter on commission, as I have stated, and also in the purchase made on the 23d of July, and in the butter purchased of Mills in August of the same year.   They paid their share of the money, and shared profit and loss.   I informed Mr. Mills on the 23d day of July, 1868, when I purchased the butter, that S. C. Noble & Co. were equally and jointly interested with me in the contract I then made with him.   I told him what their interest was."

The plaintiff afterwards requested the privilege of explaining his testimony on this point, was permitted to explain, and testified as follows :

" I did not inform Mills at the time the trade was made on the 23d day of July, 1868, of the interest which S. C. Noble & Co. had in the contract ; but I informed him soon afterwards."

On this point the defendant testified in chief as follows :

" Mr. Hibbard told me when he purchased the butter on the 23d of July, 1868, that S. C. Noble & Co. had a joint and equal interest with him in the contract."

And on cross-examination :

" I would not say he told me on that day, it might have been afterward, but it was before the delivery of the butter."

It appeared that the firm of S. C. Noble & Co. consisted of S. C. Noble and S. C. Noble, Jr.   It also appeared that all the bills made by defendant were made to the plaintiff, and the plaintiff's evidence tended to show that when some difficulty had arisen about the settlement, Mr. Noble, one of said firm, spoke to the defendant about the matter, to whom the defendant replied that he had nothing to do with him in the matter ; that he knew no party to the transactions except the plaintiff.   The defendant testified that he

had no recollection of having any such conversation with Mr. Noble.

The defendant insisted that whether he was told at the time the contract was made, or afterwards, as the testimony tended to show, of the interest which S. C. Noble & Co. had in the matter, the suit could not be maintained, because of the non-joinder of said firm. But the court ruled otherwise, and charged the jury, " that if they found that at the time the contract was made, it was understood by the plaintiff and the defendant to be a contract between them, and not between the plaintiff and Noble & Co. on the one part, and the defendant on the other, then the action could be sustained by plaintiff, if he sustained his case by the necessary proof in other respects ;" to which the defendant excepted.

The defendant did not claim that the weights at which he purchased the butter, were greater than the true weights ; and on cross-examination he testified that so far as he had any knowledge, the weights at which he purchased the butter were true and accurate weights. The plaintiff's testimony tended to show that the weights as rendered by the defendant to the plaintiff, were larger than the true weights. It appeared without dispute, that when the defendant purchased the butter, he marked the weights on the tubs, both the gross weight and the tare ; that some time during the first half of August, he had the butter repacked and reweighed, and when it was reweighed, the marks at which the butter was purchased were mostly planed off the tubs, and new marks put on, and the marks so put on were the weights rendered to the plaintiff in the invoices given him of the butter. The defendant testified that the new marks were in some instances such as gave a larger net weight to the butter, and in some a smaller, than the first marks ; but, on the whole, that they did not materially vary the amount; that, really, the aggregate of the new marks was less than that of the old.

There was no testimony in the case to show the weights at which the defendant purchased the butter of the persons of whom he purchased it. The defendant insisted, and requested the court to charge, that unless the plaintiff should show that the weights at which he received the butter of the defendant, ex-

ceeded the weights at which the defendant bought the butter of those of whom he purchased, the plaintiff could not recover. The court ruled, and charged the jury, that in this action the plaintiff's recovery was limited to the cause of action set out in his declaration; that by the construction which the court gave to the declaration, the parts of the statement referring to the weights at which the defendant purchased the butter, were a clause inserted in the declaration for the benefit of the defendant; and that the plaintiff could recover in this action for the difference between the weights as rendered to him by the defendant, and the true weights of the butter delivered, when delivered; and that if the plaintiff showed to the satisfaction of the jury that the weights rendered to the plaintiff by the defendant were greater than the actual weights of the butter, the plaintiff was entitled to recover the balance of money paid for such excess of weights, and the interest thereon. Upon this point, after stating the contract as declared upon, and reciting some of the averments of the declaration, the court charged the jury as follows : " The plaintiff further avers that the defendant did not return just weights of the butter—the weights he gave the persons of whom he purchased it—and alleges that the weights allowed by the plaintiff to the defendant, were for a much greater amount than those the defendant allowed to those of whom he purchased, and exceed by a great many pounds the actual weights thereof, to wit, the sum of two thousand pounds. The plaintiff does not go for that cause of action, if it may be deemed an independent cause of action, because he does not show by his proof, that the weights at which he purchased it of other persons, were variant, so far as to predicate the right of recovery upon those allegations. But he goes on further to aver in his declaration : ' And the plaintiff avers that the defendant, contriving to injure the plaintiff, rendered to him an incorrect statement of the weights of the butter he purchased, and so procured the plaintiff to pay him a much larger sum of money than the defendant was justly entitled to on delivery thereof as aforesaid.'

" Under this declaration, the plaintiff was to have the butter at the actual weights, irrespective of the weights at which the de-

fendant bought it. It was claimed in argument, that he was to take it at the weights at which the defendant bought it. I don't think that is a fair construction to put upon this declaration. I think the rights of the parties are to be determined, as far as the weights are concerned, by the actual weights at the time the butter was to be delivered, and I so instruct you for the purposes of this trial. If the contract was as Mills claims it, that the butter was to be delivered in a week, what was the duty of Hibbard about it? It was his duty to take the butter at what it weighed at the end of the week,—at the time that he was to take it,—and if Mills was ready to give him the true weight at the time when the butter was to be delivered, he fulfilled the obligation on his part, as far as the weight was concerned. Hence this question of shrinkage comes in. * * * If you find that it will shrink, you have yet to determine how much it will shrink at a given period of time, because Mills fulfilled his obligation when he weighed that butter, if he did, and when he was ready to give weights at the time Hibbard was to take the butter. Hence, after that time, was there any shrinkage upon this butter? If there was, it would not be for Mills to lose that shrinkage—it would be for Hibbard." To which ruling and charge, the defendant excepted.

The plaintiff's testimony further tended to show, that the defendant purchased under said contract 330 tubs of butter. The defendant's evidence tended to show that said 330 tubs of butter were not bought by him on commission for the plaintiff, but were sold by him to the plaintiff. It appeared that on the 10th of September, 1868, the plaintiff purchased of the defendant about 700 more tubs of butter, making in all, with the 330 tubs, 1,572 tubs.

About the first day of September, 1868, the plaintiff, by letter, ordered the 330 tubs shipped to him at St. Albans, and they were shipped accordingly, and arrived at St. Albans about the 4th of said September, and the defendant sent an invoice with the butter. The plaintiff then examined and weighed some of the butter, and compared the weights with the weights then on the tubs, which were the weights put on when the defendant caused the butter to be reweighed as aforesaid. The plaintiff received the butter without objection, shipped it to Boston, where the greater part of

it was sold within about three weeks after it was shipped to St. Albans. It appeared that after the contract on the 23d of July, the plaintiff, at different times, paid money to the defendant on account of the butter transaction, so that previous to the delivery of the 330 tubs, the amount of that butter was more than paid for. There was no evidence that there was any payment for that specific lot of butter, but the payments were made on the general account of all the butter transactions. The defendant requested the court to charge, that if the jury found the butter was paid for, and so shipped and received without objection, the plaintiff could not recover. The court declined so to charge; to which the defendant excepted.

The plaintiff's testimony further tended to show, that on or about the 17th of October, 1868, he called on the defendant at his home near Waterloo, in Canada, for the remainder of the butter (not bought on commission), being 1192 tubs, for which the defendant claimed there was then due to him the sum of $1,474.18, and that the defendant then and there refused to deliver said butter, or to allow the plaintiff to examine or see it, unless he first paid the balance claimed by the defendant to be then due, and signed the receipt hereinafter mentioned. It appeared that at that time the plaintiff had advanced to defendant on account of the whole 1522 tubs of butter, some seven or eight thousand dollars in silver more than the value of the butter he had received. The plaintiff's evidence tended to show, that he claimed and requested to have the butter weighed, and that the defendant refused to have it weighed, and claimed that the plaintiff should receive the butter— the first purchase, at the weights made by defendant when he re-weighed it as aforesaid, and the last purchase, at the weights then on the tubs, and that the plaintiff should lose the shrinkage; that the plaintiff refused to so receive it, and denied that he was to lose the shrinkage; that there was a good deal of talk during the two or three days next before the 20th of October; that the plaintiff said to defendant, " You have tampered with the weights of the butter," which the defendant denied ; that the plaintiff told defendant he wanted a statement of the weights at which the defendant bought the butter, which the defendant refused to furnish.

33

The defendant's evidence tended to show that the only question in dispute at that time was as to who should lose the shrinkage on the butter, and that he refused to have the plaintiff interfere with the butter in any manner, until that question should be settled. The plaintiff, acting upon the advice of counsel, on the 20th of October, told the defendant he would pay the balance claimed and receive the butter, under protest, and should try to get even with him, and then paid said balance, and executed and delivered to the defendant a receipt, of the tenor following :

"WATERLOO, Oct. 20, 1868.
"Received of John N. Mills fifteen hundred and twenty-two tubs of butter, accepted per invoice delivered to-day.
E. L. HIBBARD."

The invoice referred to in said receipt, was a bill wherein the defendant had charged the plaintiff with 1522 tubs of butter, with prices and weights carried out ; also, with a commission of one half of a cent per pound on 330 tubs ; and with various items of expense incurred in connection with the butter transactions— amounting in all to the sum of $17,181.99 ; and wherein the plaintiff was credited for cash received from time to time to the full amount of said bill—the last item of credit being under date of October 20, 1868, for " cash in full," $1,474.18.

The defendant insisted, and requested the court to charge, that if the jury found the facts as to what took place on the 20th of October, and for two or three days before, as the testimony tended to show, and that the plaintiff executed said receipt and received the butter, then the plaintiff was not entitled to recover. But the court refused to so charge ; to which the defendant excepted.

The plaintiff offered in evidence the depositions of Henry W. Clark, Ira H. Ballou, and A. D. Hibbard, commission merchants in Boston to whom the butter was consigned for sale, to which were annexed accounts of sales rendered by them respectively to said Noble & Co., the consignors. It appeared from said depositions, that the deponents had no personal knowledge of the weight of the butter consigned to them, and no knowledge thereof, except what they derived from their books of entry, kept in due course of their business, and from said accounts of sales. The defendant

objected to said depositions and accounts of sales as evidence ; but the court admitted the same ; to which the defendant excepted. The court charged the jury, that they were not to consider said depositions and accounts of sales, as evidence, unless they found that the deponents had personal knowledge, aside from inspection of books or records, of the weights in question, and that it was not sufficient that the deponents should testify from what they had seen on any books ; that if they were satisfied from examination of the depositions that all the knowledge the deponents had of the matter, was from examination of books or accounts of sales, then no weight should be given to that testimony ; but if they found that the deponents testified from actual knowledge, and believed their statements, then they were to give credit to the testimony ; to which the defendant excepted. Verdict for the plaintiff.

*H. S. Royce*, for the defendant.

The suit should have been brought in the name of all the persons from whom the consideration moved. Barb. Parties, 31; *Warden* v. *Burnham*, 8 V.t. 390. The nonjoinder may be taken advantage of on the trial. *Hall* v. *Adams*, 1 Aik. 166 ; s. c. 2 Aik. 130.

The defendant's request, that it was incumbent on the plaintiff to show that the weights at which he received the butter were greater than those at which the defendant purchased it, was improperly refused. And the charge given upon this point, which seems to involve the same question, and in which the court gave a construction to the declaration, is clearly erroneous.

The case finds that on the 4th of September, 1868, the butter mentioned in the declaration was delivered to the plaintiff at St. Albans, upon the plaintiff's order, with the weights marked upon the tubs, corresponding with an invoice which plaintiff received with the butter ; that the plaintiff examined and weighed the butter ; received it without objection ; paid for it ; and sold most of it within three weeks afterwards. The jury should have been instructed as the defendant requested, that under such circumstances, the plaintiff could not recover. The parties had equal knowledge, and the same means of knowledge, as to the weights

of the butter. Money voluntarily paid by the plaintiff under such circumstances, cannot be recovered back. *Evans* v. *Gall*, 17 N. H. 573.

On the 20th of October, after the claims of the parties had been made, and the facts relating to them had been discussed for three days, the plaintiff paid the balance demanded by the defendant, and agreed to receive the butter, including the 330 tubs, at the weights stated in an invoice then delivered to him, which, so far as the 330 tubs were concerned, were the same weights marked upon them when delivered. And the refusal of the court to charge on this as requested, and the charge as given, were erroneous. A party who has paid voluntarily, under a claim of right, shall not afterwards recover back the money, although he protested at the time against his liability. *Preston* v. *Boston*, 12 Pick. 13; *Sheldon* v. *South School District*, 24 Conn. 91; 6 Abbott Dig 308, § 11; *Benson et al.* v. *Monroe*, 7 Cush. 131; *Forbes* v. *Appleton*, 5 Cush. 117; *Wyman* v. *Farnsworth*, 3 Barb. 371.

The depositions of Hibbard, Clark, and Ballou should have been excluded. 1 Greenl. Ev. § 436. The accounts of sales were improperly admitted. *Peltier* v. *Seward*, 12 Wend. 386. To make an abstract, or copy, of entries on a private book, admissible, it must be sworn to by the person who delivered the goods and made the entries. 1 Phil. Ev. 588; *Cooper* v. *Morrill*, 4 Yeates, 341.

*Noble & Smith* and *Benton & Irish*, for the plaintiff.

It would have been a misjoinder, had Noble & Co. been joined as plaintiffs. Collyer Part. § 365.

The defendant made no claim that he allowed greater than the true weight to the parties of whom he purchased the butter in question. He testified that the weights at which he purchased, were identical with the true weights. In this view, he has nothing to complain of in the charge, that the plaintiff had the right to recover the money paid for the excess of the weights rendered, over the true weights. The grounds of liability and the measure of recovery upon the charge as made, were both precisely equivalent to that demanded by defendant in his request.

A verdict will not be set aside, unless there has been some injustice.

The defendant requested the court to charge, that if the jury found that the butter was paid for and shipped in the manner described, and received without objection, the plaintiff could not recover. The gravamen of this exception is removed by the fact shown in the case, that the payments were not specially applied to this lot of butter, but were general payments on account; more than the value of the butter so delivered; and made some time previous to the delivery. This entirely negates any presumption of adjustment of weights in making the payments, and they had nothing to do with the question of correctness of weights. This exception, then, is narrowed to the question of receiving the butter without objection. The jury have found that the invoice sent with it, was a false account of the weights. What state of facts will bind a party to accept a false weight? This could only be done by some kind of estoppel. To effect this, either the plaintiff must have acquired a benefit, or he must have left the defendant to suffer an injury by his neglect to make objection. Neither of these was done. The plaintiff's right to take and dispose of the butter, was perfect before he received the invoice. Mills had no right to impose any conditions upon its receipt. The trade was fully completed in all its details before this.

The rendering of the bill of weights could in no view vary the contract. The plaintiff, in sending the butter to market and selling it, did what he had a right to do before the sending of the invoice. He received no benefit from not making the objection. If he had made it, and had waited, Mills could not have refused him the butter. The selling of the butter was therefore no estoppel. Again, neglect to make objection to these false weights, did not injure the defendant. This invoice was not a bill of the weights at which he received the butter. It was a bill of new weights. Notice of their being false would not have benefited him, because there was nothing then for him to correct with any other party.

The next exception relates to the effect of the proceedings on the 20th of October—the payment of money and the giving of the

receipt.   This payment of money was not a voluntary payment, but was made under duress.   That there is such a thing as duress of goods, is now well settled.   *Harmony* v. *Bingham*, 2 Kern. 99 ; *Astley* v. *Reynolds*, 2 Stra. 915 ; *Shaw* v. *Woodcock*, 7 B. & C. 73 ; *Atlee* v. *Buckham*, 7 M. & W. 633 ; *Chase* v. *Donnal*, 7 Greenl. 134 ; *Fleetwood* v. *City of New York*, 2 Sandf. 475 ; *Clinton* v. *Strong*, 9 Johns. 370 : *Ripley* v. *Gelston*, Ib. 201 ; *Preston* v. *City of Boston*, 12 Pick. 13.   Of the same kind are the daily occurring instances of recovering money back when payment was coerced by color of legal proceedings, such as tax-warrants and customs seizures.   As to the receipt, the same rule that entitles the party to recover back the money, avoids the effect of any written instrument executed under such duress.   2 Greenl. Ev. § 301, n. 2.

The depositions were properly admitted.   There were statements in each of them tending to show that the deponents had knowledge of the matters testified to.   The accounts of sales were properly admitted, having been verified by the testimony of a witness in court having knowledge of the matters.

The opinion of the court was delivered by

PIERPOINT, Ch. J.   The first question raised by the defendant upon the exceptions is, that this suit cannot be maintained in the name of this plaintiff alone, and that Noble & Co. should have been joined.   Under the instructions of the court below, the jury found that at the time the contract on which this action is based was made, it was understood by the plaintiff and defendant to be a contract between the plaintiff and defendant, and not between the plaintiff and Noble & Co. on the one part, and the defendant on the other.   This being so, it is clear that this action can be maintained in the name of the present plaintiff, notwithstanding, as between the plaintiff and Noble & Co., said company may have some interest in the contract.   The defendant cannot avail himself of such interest, to defeat an action brought upon the contract, as it was actually entered into understandingly by the parties to it.

On trial, the defendant requested the court to charge the jury, that " unless the plaintiff should show that the weights at which he received the butter of the defendant, exceeded the weights at which the defendant bought the butter of those of whom he purchased it, the plaintiff could not recover." The court declined so to charge. We think the defendant was entitled to the charge requested. It was in fact asking the court to charge that the plaintiff could not recover unless he proved the facts alleged in his declaration as the ground of his action. The plaintiff in his declaration alleges, that " on the 23d of July, 1868, he employed the defendant to purchase for him about 600 tubs of butter, for which the defendant was to pay not to exceed twenty cents in silver per pound, and the defendant was to make true and accurate weights in purchasing the same, and such weights as were allowed by the defendant to those of whom he should purchase said butter, should be allowed to the defendant, &c.; that the defendant purchased the butter, delivered the same to the plaintiff, and was paid therefor the sum he claimed to have paid the persons of whom he purchased." The breach alleged is, that " the weights allowed by the plaintiff to the defendant were for a much greater amount than those the defendant allowed to those of whom he purchased, and exceeded by a great many pounds the actual weights thereof, to wit," &c. ; and also, that " the defendant, contriving to injure the plaintiff, rendered to the plaintiff an incorrect statement of the weights of the butter he purchased, and so procured the plaintiff to pay him a much larger sum of money than the defendant was justly entitled on delivery thereof as aforesaid." Under this declaration, all that the plaintiff is entitled to recover for, is the excess of the weight of the butter as represented by the defendant and paid for by the plaintiff, over the weight of the butter as purchased and paid for by the defendant at the time of such purchase. But the county court seem to have placed a different construction upon the declaration, and to have regarded the last clause in the allegation of breaches as enlarging the plaintiff's right to recover beyond the terms of the contract declared upon, as the court in their charge say, that " by the construction which the court gave to the

declaration, the part of the statement referring to the weights at which the defendant purchased the butter, was a clause inserted in the declaration for the benefit of the defendant, and that the plaintiff could recover in this action for the difference between the weights as rendered to him by the defendant, and the true weights of the butter delivered, *when delivered*" And in a subsequent part of the charge, after alluding to the averment in the declaration that the defendant represented the weight of the butter as greater than the weight he allowed to those of whom he purchased, the court say : " The plaintiff does not go for that cause of action, because he does not show by his proof that the weights at which he purchased it of other persons, were variant so far as to predicate a right of recovery upon those allegations." And then after reciting the last clause in the allegation of breaches, the court say, that " under this declaration the plaintiff was to have the butter at the actual weights, irrespective of the weights at which the defendant bought it."

The whole charge when taken together, narrows the question for the jury to the single point as to the difference between the weight of the butter as the defendant bought it, and the weight of the butter when the defendant delivered it to the plaintiff, and this point really lies outside the declaration and the contract. As the plaintiff by his contract was to take the butter at the weight at which the defendant bought it, and did not show and did not claim that the defendant delivered it to him as of any greater weight than he did buy it at, it was clearly error to allow the plaintiff to recover because the butter weighed less when the plaintiff took it than it did when the defendant bought it. It was for this latter difference, under the charge of the court, that the plaintiff recovered, and it was in respect to this matter that the question as to the shrinkage of butter in weight became material.

The defendant also requested the court to charge the jury, that if they found the facts to be as to what took place on the 20th October, 1868, as the testimony tended to show, and the plaintiff executed the receipt and received the butter, then the plaintiff was not entitled to recover.

It appears that prior to the 17th day of October, 1868, the dealings in butter between these parties had been quite extensive, and prior to said time, quantities of butter, including the 330 tubs in controversy in this suit, had been purchased, and on·said day the plaintiff called on the defendant for the·delivery of a quantity of butter which he had bargained for (which had not been bought on commission), a large portion of the price of which the defendant had in his hands, which the plaintiff had advanced to him on account of their butter trade, leaving a balance still due the defendant of some 1472 dollars. When the parties met, they disagreed as to the terms of the trade, the defendant claiming the plaintiff was to take the butter at the same weights that he had purchased it at, and the plaintiff claiming that he was to have it at its weight at the time of the delivery. The defendant also claimed that the plaintiff should pay the amount due him on the butter transactions, and close their business, and give a receipt for the butter the defendant then had, and also for the said 330 tubs, and that if the plaintiff would not comply with these claims, he would not deliver the butter. After two or three days negotiation on the subject, the plaintiff concluded to comply with the defendant's claims, and paid the money claimed, received the butter and executed the receipt, and thereupon the defendant delivered the butter.

To avoid the effect of this adjustment, the plaintiff insists that he acted under duress of his goods ; that unless he acceded to the defendant's claims, he could not get the butter. The answer to this is, that the butter had not become the property of the plaintiff ; he had contracted for its purchase, but before the contract was consummated by delivery, the parties ascertained that they did not agree as to the terms of the contract, and the defendant refused to carry out the agreement, unless the plaintiff would accede to his understanding of the agreement. The defendant had the same right to insist upon his view of the contract that the plaintiff had. They differed as to the mode of determining the weight, and the defendant's rule was finally adopted. The defendant insisted that the whole should be paid for, and *that* he had a right to insist upon ; and as the plaintiff had re-

34

ccived the 330 tubs in controversy here, and as the rule of ascertaining the weight claimed by defendant was according to the contract as conceded by both parties, the plaintiff yielded nothing in respect to this portion of the butter, in signing the receipt.

But the plaintiff says further, that if he had not acceded to the defendant's terms and taken the butter, it would have left the defendant largely indebted to him for moneys paid to the defendant on account of these butter transactions. This may be so ; but it does not constitute what the law terms duress ; it is the common case of the man who makes better terms with another who owes him, than he would if he did not. Besides, it does not appear that the plaintiff acted from any such consideration, or that he asked for the money, or that he could not have had it if he had asked for it. We think the defendant was entitled to the charge requested in this respect.

We think the depositions objected to should have been excluded. The only material matters that are testified to in those depositions, are matters that the witnesses themselves say they had no personal knowledge of, and of course their evidence was inadmissible ; and the error is not cured by the instructions to the jury, not to regard such testimony if they found the witnesses had no personal knowledge of what they swore to. The jury would be very likely in such a case, to be influenced and misled by such depositions.

Judgment reversed, and case remanded.