FRANK DONNER v. STATE OF NEBRASKA.

FILED MAY 20, 1903.   No. 12,990.

1. **Evidence: HEARSAY.** Ordinarily hearsay testimony is inadmissible.

2. ———: SECONDARY. What the law requires is the production of original evidence, the best evidence obtainable; secondary evidence being admissible only when for some reason primary evidence can not be secured.

3. ———: ———. A witness is not permitted to state what appears from books or records where it is shown that the books were not kept by the witness nor the entries made by him nor in his presence, such statements being merely hearsay testimony.

4. Error: HEARSAY TESTIMONY. Testimony of a witness for the prosecution in the case at bar, admitted over the objections of the defendant, which is set out in the opinion, examined and *held* to be hearsay testimony and its admission prejudicially erroneous.

ERROR to the district court for Antelope county: JAMES F. BOYD, DISTRICT JUDGE. *Reversed.*

*Norman D. Jackson, H. C. Brome, O. A. Williams* and *A. H. Burnett,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown,* for the state.

HOLCOMB, J.

The defendant in the trial court who comes here by proceeding in error was informed against and, by a jury, found guilty of the larceny of two head of cattle of the value of $45. After overruling a motion for a new trial, the trial court pronounced sentence of imprisonment in the penitentiary for a period of four years; to secure a reversal of which is the object of the present proceedings.

The errors assigned which are relied on and argued by counsel for the accused relate to the rulings of the trial court in the admission of certain testimony over objections of the defendant, which it is contended was hearsay testimony and, therefore, incompetent. The cattle alleged to have been stolen by the accused were found to be missing from a pasture containing a large number kept there during the grazing season. The prosecution by the state was conducted on the theory that the accused took those mentioned in the information with others from the pasture and with his own cattle drove them to Oakdale, a railway station near by, where he shipped the bunch, being a car-load, to the South Omaha market and there disposed of them through a firm of commission merchants operating at that place. The evidence is conclusive to the effect that the defendant, at about the time of the alleged larceny, shipped in the name of the Antelope County Bank, doing business at Oakdale, a car-load of cattle to Shelley, Rogers & Co. at South Omaha. Whether the stolen cattle were, in fact, included in the shipment thus made by the accused, depended upon the evidence of witnesses who were qualified to testify to the receipt of the cattle at the stock yards and to identify the car-load coming from Oakdale as the consignment made by the bank at the instance of the accused to Shelley, Rogers & Co. There appears to have been no evidence obtainable by which the stolen cattle could be identified as being in the possession of the accused at the time or prior to the shipment of the car-load from Oakdale. On this point, it is the contention of counsel for the accused

that the only evidence, tending to prove that the cattle alleged to have been stolen were a part of the car-load consigned by the bank at Oakdale to the commission merchants at South Omaha, was hearsay and, for that reason, incompetent, and because thereof the verdict of guilty can not be sustained. The testimony of this character admitted over objection by the defendant, which is especially urged as being erroneous, is found in the testimony of a certain witness named Jones who was assistant weighmaster of the stock yards of South Omaha. After testifying that he was receiving and weighing stock on the 17th of July, at South Omaha, this being the day after the accused shipped the car of cattle from Oakdale, the witness was asked:

"You may state if on that date you received and weighed a consignment of stock from the Antelope County Bank to Shelley, Rogers & Co."

Before the answer of the question was allowed, the witness was cross-examined as to his competency to testify as to the facts inquired about, in which it was disclosed that his only knowledge, regarding the cattle he was testifying about being shipped by the Antelope County Bank or having come in a car from that place, was from information received from other employees of the stock yards; that the first knowledge he had of the cattle was when he found them in a particular inclosure after being unloaded and, from the records kept by the stock yards company and by other employees, he learned where they came from, who the consignor of the load was, and to whom they were consigned. Objection was made to the witness's answering the question put by the state because it appeared that his testimony was hearsay and incompetent. The objection was overruled and exception taken, and the witness's answer to the question was: "I did." He was then permitted to testify what he did with the particular bunch of cattle purporting to have been consigned by the Antelope County Bank to Shelley, Rogers & Co., into what yard or pen he turned them and in whose charge they were placed. The

bunch of cattle thus identified as coming from the accused was then traced into the hands of the consignee Shelley, Rogers & Co. and from them to others, where they were afterwards found and identified by the owner and others as the cattle which had been stolen from the pasture in Antelope county where they had been kept. On cross-examination the witness Jones was asked:

Q. Where did you get your information from, when you say you received a consignment of cattle?

A. From the car number and consignee and consignor, then it is turned over to me. I take the bunch out and count it.

Q. That is the one source of your information?

A. That is the one way I know of by.

Q. That is the only source of the information of the fact you have testified to?

A. I took the car number from the books furnished me, then I counted them out of the chutes and turned them over to an employee of the company.

Q. And your information comes from the books kept by some one?

A. Yes, sir.

The defendant thereupon moved the court to strike out the testimony of the witness because hearsay and based upon certain books that have not been received in evidence and incompetent and immaterial. The objection was overruled and exceptions taken. There is no other evidence in the record connecting the bunch of stock received at South Omaha, in which the stolen cattle were found with the shipment made by the bank for the accused, except that which we have just quoted. The testimony of other witnesses identifying the stolen stock found in South Omaha must, necessarily, so far as its connection with the accused is concerned, rest on the testimony of the witness Jones, to the effect that the cattle afterwards identified as being stolen were a part of the car-load shipped by the defendant's order at the time stated. Whether the assistant weighmaster should be permitted to testify, that the bunch

of cattle he identified were those included in the consignment made by the Antelope County Bank to Shelley, Rogers & Co., was of the most vital importance in determining the question of the guilt or innocence of the defendant. The state's case rested almost entirely on its ability to identify the stolen cattle after they reached South Omaha as being those included in the car-load shipped from Oakdale by the bank at the request of the accused. The testimony was manifestly hearsay and regarding a matter that vitally affected the most essential fact to be established, viz., the possession by the defendant of the stolen property. The state having proved that the defendant had shipped, through the Antelope County Bank as his own and asserting ownership over them, a car-load of cattle to Shelley, Rogers & Co., competent proof that the stolen cattle were a part of the shipment would be, under the circumstances, such strong evidence of guilt as to warrant the jury in finding the accused committed the larceny. The witness Jones, although he had no personal knowledge of the fact, was permitted to testify that the bunch of cattle which he found in a certain chute in the stock yards was the car-load of cattle consigned by the bank to Shelley, Rogers & Co. Then by other witnesses it was proved to the satisfaction of the jury that in the bunch were the two stolen cattle and thus possession of the stolen property was traced to the accused. The only knowledge the witness had as to where the cattle came from, in what car they were shipped, by whom consigned and to whom consigned, was derived from the records and books of the stock yards company. He did not see or have personal knowledge of what car these particular cattle were taken from, when they were unloaded. His testimony in that regard was not original. It was not the best evidence. It was, in legal contemplation, the same as though some third party had told the witness that the bunch of cattle he was testifying about came in a certain numbered car and was the shipment made by the bank at Oakdale to the consignees in South Omaha. The person unloading the car,

which was used by the accused in shipping the cattle from Oakdale to South Omaha, was not offered as a witness. There was nothing to show who made the entries in the book from which the witness obtained his information, when they were made or under what circumstances, nor was the absence of the person who made the entries attempted to be accounted for in any way. It is elementary that as a general rule hearsay evidence is inadmissible. It is true there are certain well recognized exceptions to the rule, but we are aware of none which would authorize the admission of testimony of the kind given by Mr. Jones as coming within any of the recognized exceptions. What the law requires is the production of original evidence, the best evidence obtainable, secondary evidence being admissible only when for some reason primary evidence can not be secured. Wharton, Criminal Evidence (8th ed.), sec. 220; *Village of Ponca v. Crawford,* 23 Neb. 662; *Bennett v. McDonald,* 59 Neb. 234. In *Traber v. Hicks,* 131 Mo. 180, it is said that while a witness may refresh his memory from memoranda made by himself at or near the time of the transaction, he may not do so from those made by others and as to facts of which he has no personal knowledge. Statements by a witness as to what appears from books or records, where it is shown that the books were not kept by the witness, nor the entries made by him or in his presence, are nothing more than hearsay testimony. *Young v. Miles,* 20 Wis. 646. To the same effect are *Thomas v. Woodruff,* 53 N. Y. Super. 327; *Gulf, C. & S. F. R. Co. v. Frost,* 34 S. W. (Texas Civ. App.) 167; *McCornick v. Sadler,* 10 Utah, 210; *Hibbard v. Mills,* 46 Vt. 243.

Although loth to interfere with the judgment of the trial court in this case, we can not escape the conclusion that the verdict of guilty as found by the jury can not be sustained, without ignoring and violating fundamental principles of the law of evidence. The record disclosing, as it indubitably does, prejudicial error in the admission of the testimony referred to over the objections of the defendant,

the verdict and sentence must be set aside and a new trial
awarded. The judgment of the trial court is reversed and
the cause remanded for further proceedings in conformity
with law.

REVERSED.