CHARLES DEEDER V. STATE OF NEBRASKA.

FILED DECEMBER 18, 1912.     No. 17,752.

1. Evidence: SECONDARY EVIDENCE. "What the law requires is the production of original evidence, the best evidence obtainable; secondary evidence being admissible only when for some reason primary evidence cannot be secured." *Donner v. State,* 69 Neb. 56.

2. ———: ———: FRAUD AT ELECTION: MISREADING BALLOTS. In the prosecution of a judge of election under an information charging him with having wilfully and wrongfully misread the ballots cast at a general election, the ballots cast at such election are the best evidence of how and for whom they were cast; and, unless it be first shown that such ballots have been lost, or so mutilated as to render them inadmissible as evidence, secondary evidence of such facts is not admissible.

ERROR to the district court for Hitchcock county: HARRY S. DUNGAN, JUDGE. *Reversed.*

*C. E. Eldred* and *F. M. Flansburg,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

FAWCETT, J.

Plaintiff was informed against in the district court for Hitchcock county. The gist of the charge is that defendant, being a duly appointed, qualified, and acting judge of election at the general election for the year 1909, "did then and there fraudulently, unlawfully, knowingly and wil-

fully violate his official oath and duty in that said Charles Deeder did not then and there cause the ballots which had been then and there taken and cast at said election to be fully read and ascertained, and did not then and there cause a true statement of the ballots then and there taken and cast at said election to be made according to the best of his knowledge and ability, in that said Charles Deeder did then and there fraudulently, unlawfully and wilfully read and cause to be read and counted certain ballots to the number of 16, or some other number, then and there cast at said election for Ira E. Thomas for the office of county clerk of said county, in favor of and as if cast for a candidate other than for the said Ira E. Thomas;" with a similar charge of misreading 9 votes for the office of county treasurer, 10 votes for the office of sheriff, 5 votes for the office of superintendent of schools, and 5 votes for the office of county commissioner. Defendant was found guilty and sentenced to a fine of $300 and imprisonment in the county jail for a period of three months, from which sentence and judgment he has prosecuted error to this court.

Plaintiff in error, whom we will designate as defendant, has assigned and discussed 12 separate assignments of error. Assignment No. 7 is, as stated by the attorney general, the main question in the case. Having reached the conclusion that this assignment is good, and that the judgment must be reversed for the error therein complained of, the other assignments argued will not be considered. This assignment alleges: "The court erred in permitting witnesses called on behalf of the state to testify orally, (a) whether or not plaintiff's exhibit 2 was similar to the ballot voted by them at the election in controversy; (b) for whom they voted for the several county offices in controversy; (c) as to how they marked the ballots cast by them; and (d) as to what tickets they voted, without the production of the ballots which would be the best evidence of such facts." Upon the trial the ballots were not produced, nor any reason given for not producing them. The

precinct poll book, a blank official ballot similar to those used at the election, and a card containing instructions to voters were introduced in evidence. The poll book shows that the total vote polled was 35. There were indorsed on the information the names of 42 witnesses, over half of whom were called to testify. The evidence shows that Frank Shank, Roy Barnett, and defendant acted as judges of the election, and S. S. Powell and Frank Wiley as clerks; that, a few minutes after the polls closed, the canvass of the vote was entered upon, the arrangement being that Barnett was to hand the ballots to defendant, defendant was to read them, Mr. Shank was to string them, and the clerks, Powell and Wiley, were to record the votes. The poll book showed that for sheriff W. M. Dennis received 10 votes; for county clerk Ira E. Thomas 4 votes; for county treasurer W. S. Britton 9 votes; for county superintendent Bessie V. Crews 17 votes; and for county commissioner E. D. Jones 19 votes. The contention of the state is that defendant fraudulently read the ballots so that Mr. Dennis received but 10 votes for sheriff, when he in fact received at least 18; that Mr. Thomas received but 4 votes for county clerk, when in fact he received at least 18; that Mr. Britton received but 9 votes for county treasurer, when in fact he received at least 17; that Bessie V. Crews received but 17 votes for superintendent, when in fact she received at least 19. The method pursued by the state in making its proof was by calling a large number of electors of Union precinct, exhibiting to each witness a blank copy of the official ballot used at the election, and then showing by the witness for whom he voted for the several offices above indicated.

The purpose of this testimony was to show that the ballots were not as read by defendant. If so, the best evidence of that fact would be the ballots themselves. The state quotes from *Wheat v. Ragsdale*, 27 Ind. 191: "If the ticket cast by the witness can be found and can be identified by him, it is the best evidence of the fact, but if the ticket cannot be found, or cannot be identified by the wit-

ness, then it is competent for him to state for whom he voted;" and then argues that, "under the Australian ballot system, how can the ticket be identified by the voter? By law, he is prohibited from making any identification marks upon it." The fallacy of this argument is apparent. The ballots which defendant is charged with having misread were easy of identification. At least two of the judges of election are required to sign their names in ink upon the back of each ballot given to a voter when he presents himself at the booth. In the absence of any proof to the contrary, it must be presumed that the judges performed that duty. Hence, the identification of the ballots *en masse* was an easy matter. This is not a case of identifying a particular ballot cast by a particular voter, but it is simply the identification of the mass of ballots cast at an election, which, it is claimed, were misread by one of the judges. The undisputed evidence shows that the ballots were, as fast as counted, strung by one of the judges, tied to hold them in place, placed in a bag and the bag sealed by one of the members of the election board, taken by one of the members of the board and delivered to the county clerk, where, so far as the evidence in this record shows, they are still quietly reposing. If they have been destroyed or in any manner tampered with since the time when they were placed in that bag and the bag sealed, so as to render them unreliable as evidence or to cast doubt upon their being the particular ballots cast at the election, then the secondary evidence offered by the state would probably have been admissible. "What the law requires is the production of original evidence, the best evidence obtainable; secondary evidence being admissible only when for some reason primary evidence cannot be secured." *Donner v. State*, 69 Neb. 56. "Evidence cannot be received which, on its face, indicates that it is secondary and that the original source of information is in existence and accessible." *Bee Publishing Co. v. World Publishing Co.*, 59 Neb. 713. "Before the contents of a written instrument can be established by oral testimony, the loss of the instrument must be ac-

counted for." *Myers v. Bealer,* 30 Neb. 280. On page 287 of the opinion in the case last cited, it is said: "It does not appear that the paper is not in existence. It was left with the county judge, and he was not called to testify what search, if any, he had made for the missing paper. For all that appears from this record, it is where the county judge can place his hands upon it at any time. The person in whose custody the paper was left should have been called to establish that it was lost, before receiving oral testimony of its contents." The analogy between that case and this is perfect. The county clerk was not called to testify as to the whereabouts of the ballots. No evidence was offered to show why they were not produced. Their production, together with the poll book and the testimony of the other members of the election board, would have furnished a sure, safe and inexpensive method of proving or disproving the charge contained in the information, and would have saved the needless expense of calling in the large number of electors who voted at that election. At each attempt to offer this secondary evidence, proper objections were interposed by defendant. The objections should have been sustained.

The judgment of the district court is therefore reversed and the cause remanded for further proceedings.

REVERSED.